# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| JOSEPH J. TOMASZEWSKI, | : | |
| Plaintiff, | : | |
| v. | : | No. 5:13-cv-374 (MTT) (CHW) |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Joseph J. Tomaszewski's application for benefits. Based on the analysis below, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND[1]

Plaintiff applied for Title XVI benefits in November 2003, claiming to suffer from borderline intellectual functioning, sleep apnea, adjustment disorder with depressed mood, carpal tunnel syndrome, severe leg pain, and obesity. (R. 385–89). A reviewing ALJ found Plaintiff "disabled" in October 2004, (*Id.*), but "[s]ubsequent to the 2004 decision, Petitioner's wife inherited a substantial amount of money," and "Petitioner was informed that [his] annual household income [was] above the level allowed for SSI and that his benefits would [therefore] be discontinued."[2] (Doc. 17, p. 4). Thereafter, Plaintiff and his wife "spen[t]-down the inheritance by purchasing a home," and Petitioner re-applied for Title XVI benefits in August

---

[1] The record indicates that Plaintiff's prior records may be unobtainable. (R. 69–70).

[2] Title XVI or supplemental security income ("SSI") benefits are "intended to provide only a subsistence level [of] income" to eligible disabled persons. *See, e.g., Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994) (citing 42 U.S.C. §§ 1382, 1382a).

1

2009.[3] (R. 158–63). Plaintiff's new application was denied initially, (R. 100), on reconsideration, (R. 102), and then by a reviewing ALJ in December 2011. (R. 37–47). The Appeals Council denied review in Plaintiff's case in June 2013, (R. 12–15), and Plaintiff now seeks review before this Court, arguing that the Commissioner failed to "follow the instructions of the Eleventh Circuit in *Simpson v. Schweiker*, 691 F.2d 966 (11th Cir. 1982)" by failing to find that some form of administrative res judicata barred or weighed against the re-litigation of Plaintiff's disability. (Doc. 17, P. 2). Because Plaintiff is not entitled to relief on this legal ground, and because the Commissioner's decision is supported by substantial evidence, it is recommended that the Court affirm.

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, that decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISAIBLITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[3] Plaintiff also applied for Title II benefits, (R. 164–67), but as the Commissioner notes, Plaintiff does not appear to challenge the denial of those benefits in this action.

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## DISABILITY EVALUATION IN THIS CASE

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in this case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since at least July 1, 2007. (R. 40). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, obstructive sleep apnea, depressive disorder, borderline intellectual functioning, and non-insulin-dependent diabetes mellitus. (R. 40). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or equaling one of the listed impairments. (R. 40). Therefore, the ALJ assessed Plaintiff's RFC and made the following findings:

> After careful consideration . . .the undersigned finds that the claimant has the residual functional capacity to perform light work . . . . He can lift and carry items weighing 20 pounds occasionally and 10 pounds frequently except he can stand

and/or walk up to four hours in a normal eight-hour workday, and no more than occasionally climb, balance, kneel, stoop, crouch, and crawl. He should avoid work on ladders, ropes, scaffolding, and at unprotected heights. Due to mental impairments, the claimant is limited to only simple work with only casual contact with the general public. He has no visual, communicative, or manipulative limitations.

(R. 42)

At step four, the ALJ determined that Plaintiff could perform his past relevant work as a newspaper carrier and courier service worker. (R. 46). The ALJ also found, at step five, that Plaintiff could work as a mail clerk. (R. 47). Based on both these step-four and step-five findings, the ALJ determined that Plaintiff was not "disabled" within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff's argument to the Court is strictly a legal one. Citing *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982), and 20 C.F.R. § 416.1457(c)(1), Plaintiff argues that his former successful application for Title XVI benefits—the application approved by an ALJ in 2004—should have estopped or weighed against the Commissioner's re-litigating Plaintiff's disability with regard to Plaintiff's subsequent Title XVI application.

*Simpson*, a "benefits continuation case," is technically distinguishable from the instant case. In *Simpson*, the Eleventh Circuit held that the Commissioner erred by terminating a claimant's benefits "on the basis of evidence essentially identical to that which formed the basis for the initial award of those benefits." 691 F.2d at 969–71. *See also Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984) ("*Simpson v. Schweiker* . . . requires evidence of *improvement* to support a termination of benefits"). In this case, the Commissioner terminated Plaintiff's benefits not due to any finding of medical improvement, but rather due to excess resources.

(Doc. 19, p. 6). Because Plaintiff now challenges his "new" or "second" application in the instant case, as opposed to challenging the Commissioner's termination of his previous award of benefits, *Simpson* is not precisely on point.

*Simpson* also, by its plain terms, does not support Plaintiff's claim for a "presumption" of disability. The Eleventh Circuit in *Simpson* clearly explained that even in benefits continuation cases, "the burden remains with the claimant to prove the existence of a disability,"[4] and only the inquiry changes.[5] Therefore, insofar as Plaintiff argues that the Commissioner erred in failing to apply a presumption in favor of disability, *Simpson* does not support Plaintiff's argument.

Notwithstanding the differences between *Simpson* and the instant case, the Eleventh Circuit's line of reasoning in *Simpson* does appear applicable. In *Simpson*, the Eleventh Circuit was concerned with arbitrary agency action in the face of unchanging evidence. In the Court's words:

> If . . . the evidence in a continuation case is substantially the same as the evidence had been in the initial disability benefits request case, benefits must be continued. Otherwise, termination of benefits will often depend not on a finding of changed condition, but simply on the whim of a changed ALJ.
>
> 691 F.2d at 969

The same concern with arbitrary agency action arises in situations like that faced by Plaintiff, where a claimant is first found disabled, but then, after the Commissioner terminates benefits without making a finding of medical improvement, the claimant reapplies for but is denied benefits.

---

[4] *See also* 42 U.S.C. § 423(f) ("Any determination made under this section shall be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled").

[5] The inquiry in a "benefits continuation case" is "whether the [Commissioner's] finding of improvement to the point of no disability is supported by substantial evidence." 691 F.2d at 969.

Although *Simpson* or *Simpson*'s reasoning appears applicable in this case, the crux of the matter in both cases is whether the evidence was "substantially the same" before and after the termination of benefits.[6] In *Simpson*, for example, the Court expressly considered "whether [Simpson's] condition ha[d] improved," and it noted that:

- The same mild objective findings "had been made previously by different physicians and [had been] included in the record of the first hearing,"

- That Simpson's past benefits award had been based on pain without supporting objective medical evidence,[7] and

- That the new evidence showed that Simpson "continue[d] to manifest the same medically determinable impairments and consequent pain that resulted in the [prior] disability ruling."

691 F.2d at 970

In other words, the *Simpson* Court appears to have relied on the continuity in medical findings in determining that the Commissioner erred in terminating benefits on the basis of supposed medical improvement.

In contrast to *Simpson*, the evidence in this case is not "substantially the same" as the evidence the prior ALJ appears to have relied upon when granting Plaintiff benefits in 2004. In that earlier decision, (R. 385–89), although the 2004 ALJ found that Plaintiff's exertional limitations allowed Plaintiff to perform "at least light work," the 2004 ALJ nevertheless determined that Plaintiff's non-exertional limitations rendered Plaintiff disabled. The 2004 ALJ relied heavily on the consultative psychological evaluation of Dr. Mark S. Wagner in finding that Plaintiff had at least moderate limitations in his concentration, social functioning, and in conducting his activities of daily living. (R. 388). The 2004 ALJ also found, relying on Dr.

---

[6] *But cf. Luckey v. Astrue*, 331 F. App'x 634, 638 (11th Cir. 2009) (indicating that a mere difference in "factual time period" is sufficient to preclude the application of administrative res judicata).

[7] The pain standard has changed since *Simpson*, of course, but Plaintiff provides no analysis concerning what effect, if any, this change has upon *Simpson*'s import. *See, e.g.*, *Holt v. Sullivan*, 921 F.2d 1221, 1223 (1991).

6

Wagner's findings and on functioning reports submitted by Simpson and Simpson's step-mother, that:

> The evidence in this case shows that claimant is significantly limited in his ability to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to make simple work-related decisions, to maintain attention and concentration, to perform activities within a schedule, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.
>
> (R. 388)

In contrast to these findings in the 2004 ALJ decision, the ALJ who reviewed Plaintiff's second application in 2011 found that "[d]ue to mental impairments, the claimant is limited to only simple work with only casual contact with the general public." (R. 41–42). In making this finding, the 2011 ALJ relied upon:[8]

- A consultative psychological evaluation performed by Dr. John C. Whitley III, Ph.D., indicating that Plaintiff "would be able to make simple, work-related decisions independently," "would not decompensate under normal level[s] of change, expectations, and pressure," and "should be able to work at a consistent pace with simple and mental types of tasks," (Ex. 6F);

- Mental functioning forms completed by Dr. Linda O'Neil, Ph.D., indicating that Plaintiff was "able to do simple, non-production tasks," was "able to perform fairly low-demand tasks," and was "[n]ot substantially limited," (Exs. 7F, 8F); and

- A consultative psychological evaluation performed by Dr. William F. McDaniel, Ph.D., indicating that Plaintiff's behavior and test results were indicative of only "mild neurocognitive impairment," that "[o]nly mild impairments were observed

---

[8] The ALJ appears not to have relied upon a "Mental Impairment Questionnaire" completed by Dr. Foster Blake Brin, but that report contains cumulative findings. It indicates that Plaintiff had a "normal" ability to: (i) understand, remember and carry out simple instructions; (ii) get along with the public, supervisors and coworkers; (iii) deal with changes in the word setting; and (iv) make simple work-related decisions. (Ex. 10F).

7

on tasks [making] significant demands on concentration and memory for recent information," and that Plaintiff's "[p]rocessing speed (pace) was . . . mildly impaired, but [his] persistence and cooperation were good." (Ex. 17F).

Because the evidence relied upon by the 2011 ALJ appears to differ significantly from the evidence relied upon by the 2004 ALJ, administrative res judicata is not applicable. To put it another way, there is no basis from the record to conclude that the evidence in the two cases was so similar that only an ALJ's arbitrary whim explains the difference in outcome.

Because administrative res judicata is not applicable in this case, and because the Commissioner's decision as a whole appears to be supported by substantial evidence, the Commissioner's decision should be affirmed.

## CONCLUSION

In accordance with the analysis above, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom this case is assigned WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Failure to object may result in waiver. *See* 11th Cir. R. 3-1.

**SO RECOMMENDED**, this 21st day of January, 2015.

                                        s/ Charles H. Weigle
                                        Charles H. Weigle
                                        United States Magistrate Judge